Alfonso de la **GARZA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 53331.

Court of Criminal Appeals of Texas, En Banc.

April 11, 1979.

OPINION

PHILLIPS, Judge.

This is an appeal from a conviction by a jury on a plea of not guilty of the lesser included felony offense under a bribery indictment of conferring compensation for past official behavior in violation of V.T. C.A., Penal Code, Sec. 36.07(a). The jury assessed punishment at confinement in jail for 12 months and a fine of $2,000.00, and recommended probation as to the jail term.

The State moves to dismiss the appeal herein upon the grounds that appellant's notice of appeal which is noted on the docket to have been given in open court on December 12, 1975, immediately below the docket entry of said date, "Defendant placed on probation for a term of twelve months", was premature and a nullity, since a written order granting probation to appellant was not entered until January 27, 1976, and no further notice of appeal was ever given. The State contends that *McIntosh v. State*, 534 S.W.2d 143, requires such disposition by reason of the following statement in said decision at page 145:

"Reading Article 42.13, Sec. 4, [V.A.C.C. P.], and Article 44.08(b) [V.A.C.C.P.] together, we hold that in misdemeanor cases where probation is granted notice of appeal must be given within ten days after entry of the written order granting an appellant probation if no motions for new trial are timely filed."

The State fails to give proper importance to the immediately preceding statement by this Court in *McIntosh*, to-wit:

". . . under the terms of Article 42.-13, Vernon's Ann. C.C.P. no judgment is to be entered in such cases. See *Ex parte Smith*, 493 S.W.2d 958 (Tex.Cr.App.1973); *Coby v. State*,[4] 518 S.W.2d 829 (Tex.Cr. App.1975). Article 42.13, Sec. 4, supra, provides that the trial court shall record the fact and date that probation was granted on the docket sheet or in the minutes of the court."

The State further fails to take due cognizance of footnote four thereunder, to-wit:

Roger Rocha, Laredo, for appellant.

Charles R. Borchers, Dist. Atty., Donato D. Ramos, Stephen A. Whitworth and Sharon S. Trigo, Asst. Dist. Atty's., Laredo, and Robert Huttash, State's Atty., Austin, for the State.

"4

\*    \*    \*    \*    \*    \*

It is the better practice to enter a formal order granting probation as was done in the instant case . . ."

We think it plain, upon due consideration of said quoted matter that this Court intended the phrase "entry of the written order granting an appellant probation" to mean the written recordation of the fact and date that probation was granted, *either on the docket sheet or by a formal order in the minutes of the court.* The State's motion to dismiss is overruled.

Appellant challenges the sufficiency of the evidence. Erasmo Rodarte, a sergeant at the Webb County Jail, testified that due to guidelines established by the Sheriff of Webb County it was his duty not to recommend bail bondsmen to prisoners. However, on January 28, 1975, Sgt. Rodarte called appellant to post bond for one Antonio Castillo, alias Tony Cordoba, an undercover officer who had been arrested on a drug charge. Rodarte had not been asked by Castillo to call the appellant nor had he been requested to call any bondsman.

Rodarte further testified that the names of three bondsmen approved to make bond in Webb County were posted in the jail. The appellant was one of the bondsmen on that list. Rodarte stated that he had been told to call one of the three bondsmen in rotating priority. Rodarte was unable to say who had given him these instructions nor if it constituted jail policy.

Concerning the benefits received, Rodarte testified that on ten separate occasions he had borrowed money from Alfonso de la Garza, the appellant, without paying interest. The loans varied in amount between $5.00 and $35.00. At other times Rodarte had accepted small amounts of money as outright gifts. Sgt. Rodarte explained that the loans were made because appellant was a cousin of his wife. All of the gifts and loans were made prior to January 29, 1975, the day Sgt. Rodarte was discharged.

Tony Cordoba, an undercover officer with the Texas Department of Public Safety,

testified that on January 28, 1975, he was charged with misdemeanor possession of marihuana and placed in the Webb County Jail under the name of Tony Castillo. Bond was set at $1,000.00. Castillo told Rodarte that he wanted to get out of jail. After approximately 20 to 25 minutes Sgt. Rodarte introduced Castillo to the appellant, at which time the appellant agreed to post bond for Castillo for a fee of $150.00. Castillo had not specifically requested a bondsman nor been shown a list from which to choose a bondsman.

The bond reflected that Alfonso de la Garza, the appellant, signed the bond as attorney in fact for the surety, Jorge de la Garza, his brother.

Humberto Gutierrez, a deputy sheriff at the Webb County Jail, testified that one of his duties as a jailer was not to refer the prisoners to any lawyer or bail bondsman. He stated that the jailers were given a list of guidelines which stated that they were to show the prisoners the actual list of bondsmen. He further testified that he had been on duty in August 1974 at which time he observed the appellant hand one Sgt. Lugo some money "in a handshake type situation."

J. J. Ortegon, a sergeant at the Webb County Jail at the time of the offense, reiterated that one of the duties of a jailer was not to recommend bail bondsmen. He further testified, after a grant of immunity, that he had violated this duty on numerous occasions. He stated that when a prisoner would ask for a bondsman he would call the appellant and for these services he would receive ten percent of whatever fee was charged the prisoner by the appellant.

Fred Everett, an insurance and bond broker, testified that in August 1974 he and appellant entered into an oral agreement whereby appellant would make bonds in Webb County on Everett's behalf for a commission of 30 percent of the ten percent bond fee charged the prisoner. Later that agreement was modified to provide for a commission of 40 percent of the ten percent bond fee. Appellant told Everett at that time that he needed the additional ten per-

cent commission to pay the jailers at the Webb County Jail.

The testimony of two defense witnesses established that there was an index card posted in the jail which contained the names of three bondsmen approved to make bond in Webb County. This list of names was changed each month in an alternating manner.

P. L. Flores, Sheriff of Webb County, testified for the defense that he prepared guidelines for his employees which he updated each year. He gave a copy of these guidelines to each employee, but did not know if these were posted within the jail. These guidelines provided that the jail employees were not to recommend bail bondsmen to prisoners. On cross examination Sheriff Flores distinguished between a surety and a bondsman and stated that in his opinion appellant was a bondsman.

Mike Volpe, County Clerk of Webb County, testified that he had not received any rules or regulations from the Sheriff's Department to be filed in his office. He further stated, however, that he knew of no law which required the Sheriff to file any such rules or regulations.

Appellant testified at the punishment phase for the purpose of establishing his eligibility for a probated sentence.

■ This point hinges upon whether it was the official duty of the Webb County Jailer, Rodarte, to refrain from recommending a particular bail bondsman. The State contends that Art. 2372p–3, Sec. 15(c), V.A.C.S., which specifically prohibits such recommendation by any sheriff, peace officer or his deputy or employee, imposes such duty. Sec. 3(c) of said article specifically provides that the provisions of said act do not apply to the execution of bail bonds in counties having a population of less than 124,000 according to the last preceding federal census. We take judicial notice that Webb County's population is less than 124,000. It is argued by the State that the recommending of a bail bondsman does not relate to the *execution* of bail bonds and that said Sec. 15(c) therefore is thus appli-

cable in all counties. With this contention we disagree. We find, however, that defendant's exhibit one, shown by the testimony of the Sheriff of Webb County to contain the official duties published by him for jailers at Webb County Jail, specifically provides "deputies are not authorized to recommend professional bail bondsmen specifically." We hold that the Sheriff's statutory right of supervision and control over the jail granted by Art. 5116, V.A.C.S., authorizes the Sheriff to legally impose such restriction on his jailers and that an official duty may consist of an obligation to refrain from action as well as to affirmatively take action. The testimony of Deputy Rodarte that he recommended appellant as bondsman and that he thereafter received monies from him without any explanation other than Rodarte's claim that such were loans and his wife was a cousin of appellant is sufficient to support the finding that appellant conferred benefits on him for his violation of a negative obligation he was under in the performance of his official duties as jailer.

■ Appellant's first ground of error complains of the failure of the clerk to furnish him with a written statement of the period and terms of his probation. There is no showing in the record that this did not occur and any relief from such failure can only be raised by mandamus or as a possible defense in the event of revocation.

■ In ground of error two appellant contends that the trial court erred in declining to give the requested charge on his affirmative defense to prosecution and in overruling his objection to the charge as given by the trial court. The appellant's contention will hinge upon whether the charge given to the jury had the same effect in law as the charge which was requested. In *Mitchell v. State*, 517 S.W.2d 282, 286, we stated:

"It is well established that special requested charges may be properly refused where the instructions given by the court are adequate and fully protect the accused as to the matters included in the requested charges."

The court instructed the jury on appellant's defensive issues as follows:

"It is a defense to the lesser included offense of Conferring Compensation for Past Official Behavior if the benefit involved was a gift, or other benefit conferred on account of kinship or a personal, professional, or business relationship independent of the official status of the recipient; or a trivial benefit incidental to personal, professional, or business contacts that involves no substantial risk of undermining official impartiality.

Now, bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, Alfonso de la Garza, on or about the 21st day of January 1975, in the County of Webb, and State of Texas, as alleged in the indictment, did then and there intentionally or knowingly confer a benefit, to-wit: deliver as a gift current money of the United States to Erasmo Rodarte, a public servant, to-wit: an employee of the Sheriff's Department of Webb County, Texas, with intent to influence the said Erasmo Rodarte in a specific performance of his official duties, to-wit; to recommend a professional bail bondsman, to-wit: Alfonso de la Garza, when he, the said Erasmo Rodarte was not to recommend a professional bail bondsman while on duty as a jailer at the Webb County Jail, you will find the defendant guilty of the offense of Conferring Compensation for Past Official Behavior and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, or if you find from the evidence that the benefit conferred upon Erasmo Rodarte, if any, was either a gift or other benefit conferred on account of kinship or a personal, professional, or business relationship independent of the official status of the recipient, or a trivial benefit incidental to personal, professional, or business contacts that involves no substantial risk of undermining official impartiality, you will acquit the defendant and say by your verdict 'Not Guilty.'"

This charge sufficiently defined appellant's affirmative defense and adequately submitted the case from his standpoint. See *Skidmore v. State*, 530 S.W.2d 316. This ground of error is overruled.

Appellant's third ground of error alleges that the second paragraph of the charge quoted above is grammatically incorrect and misleads the jury in that it tells the jury that Erasmo Rodarte had an official duty "to recommend a professional bail bondsman, to-wit: Alfonso de la Garza", rather than not to recommend a particular bondsman.

In *Bailey v. State*, 532 S.W.2d 316, 322, we stated:

"In considering a charge on appeal, we will not review isolated portions, but will consider the charge as a whole."

The charge in this case, when viewed as a whole, cannot be considered ambiguous when, following the language relied on by appellant, the charge plainly states that *"Erasmo Rodarte was not to recommend a professional bail bondsman while on duty as a jailer at the Webb County Jail."* Further, the charge accurately instructs the jury, under the law as reflected in the indictment, when it should return a verdict of guilty and when it should return a verdict of not guilty. *Eanes v. State*, 546 S.W.2d 312; *Williams v. State*, 547 S.W.2d 18; *Smith v. State*, 541 S.W.2d 831.

Finding no reversible error, we affirm the judgment.