ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

August 9, 2004

The Honorable Matt Bingham
Smith County Criminal District Attorney
Smith County Courthouse
100 North Broadway, Fourth Floor
Tyler, Texas 75702

Opinion No. GA-0229

Re: Whether a county sheriff is authorized to enter into a contract to house federal prisoners or to accept and dispose of federal surplus property (RQ-0181-GA)

Dear Mr. Bingham:

You ask whether a county sheriff is authorized to enter into a contract to house federal prisoners or to accept and dispose of federal surplus property.[1]

## I. Background

You explain that your questions arise from an "Intergovernmental Services Agreement" signed by the Smith County Sheriff as an addendum to a Cooperative Program Agreement between Smith County and the United States Marshals Service (USMS). *See* Request Letter, *supra* note 1, at 1. "Under the original agreement, the federal government agreed to provide moneys for the completion of a low risk jail facility in Smith County." *Id.* In exchange for the money, the USMS "received a contractual agreement for Smith County to reserve a minimum of 50 bed spaces for use by the [USMS] to house federal prisoners." *Id.* You state that this agreement "was entered into and signed by the Smith County Sheriff and the Smith County Judge in 1988 and had an original term of fifteen years with an automatic renewal unless otherwise terminated." *Id.* In 2002, the Smith County Sheriff entered into "an Interlocal Cooperative Agreement" with the USMS "as a supplement to the original agreement which is incorporated therein, which expanded the service provided to the [USMS] by including certain transportation services to be performed by the sheriff." *Id.* at 1-2. The sheriff was the only county official to sign the 2002 agreement. *See id.* at 2. Your letters do not address whether the commissioners court officially authorized either of these agreements.

You also explain that the Smith County Sheriff's Office has received a large quantity of surplus goods over a period of several years from the federal government pursuant to the contract for housing federal prisoners. *See id.* at 8. The commissioners court "has expressed concern that these surplus items have not been properly received into the county and that disposal of the surplus items [has] not been authorized by the commissioners court." *Id.*

---

[1]*See* Letters from Honorable Matt Bingham, Smith County Criminal District Attorney, to Honorable Greg Abbott, Texas Attorney General (Feb. 4, 2004 and Feb. 7, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter and Supplemental Request Letter].

In light of these facts, you ask three questions:

> 1. Does the Sheriff, or any elected official, have authority to enter into a binding contract with the [USMS] to house federal prisoners in the county jail?
>
> 2. Does the [S]heriff, or any elected official, have the authority to accept surplus items provided under an agreement with the federal government?
>
> 3. Who may dispose of surplus items provided to a county agency by the federal government and must they be included in county inventory?

*Id.* at 1. In a supplemental letter, you explain that a county commissioner objected to your initial questions' scope. As a result, you ask three additional, related questions:

> 1. Does the Smith County Sheriff, or any elected official, have the authority to sign contracts and encumber the County without approval of the Commissioners Court?
>
> 2. Does the Smith County Sheriff, or any elected official, have the authority to donate, sell, trade or destroy County property without the approval of the Commissioners Court?
>
> 3. Does the Smith County Sheriff, or any elected official, have the authority to accept donated property without the approval from the Commissioners Court?

Supplemental Request Letter, *supra* note 1, at 1.

To answer these questions, we first address your primary concern, the authority of a county sheriff to enter a contract to house federal prisoners in the county jail, as well as the related, more general issue regarding elected county officials' authority to enter into contracts that bind the county. Next, we address the authority to accept federal surplus property pursuant to a contract to house federal prisoners. Accepting donated property on the county's behalf raises different issues and we address that question separately. Finally, we address the authority to dispose of county property.

## II.     Analysis

### A.     Authority to Enter into a Contract Binding the County

1.     *Authority to Contract to House Federal Prisoners in the County Jail*

You first ask about the sheriff's authority to enter into a binding contract with the USMS to house federal prisoners in the county jail. *See* Request Letter, *supra* note 1, at 1

(question 1). We assume that you are concerned about the sheriff's authority to enter into a contract that the commissioners court has not officially authorized. *See* Part II.A.2, *infra* p. 7.

It is well established in Texas law that the commissioners court, as the governing body of the county, "is the general business and contracting agency of the county, and it alone has authority to make contracts binding on the county, unless otherwise specifically provided by statute." *Anderson v. Wood*, 152 S.W.2d 1084, 1085 (Tex. 1941). "[A] sheriff has no authority to make contracts that are binding on the county, except where he is specially so authorized to do by statute." *Id.* A number of statutes grant to a sheriff the authority to enter into agreements in limited circumstances. *See, e.g.*, TEX. GOV'T CODE ANN. § 511.012 (Vernon Supp. 2004) (authorizing agreements between sheriffs regarding the transferring and receiving of prisoners); TEX. LOC. GOV'T CODE ANN. § 351.0415 (Vernon Supp. 2004) (authorizing sheriff to contract with a person to operate a jail commissary). In the absence of such express authority, a sheriff may not enter into a contract. *See Anderson*, 152 S.W.2d at 1085.

Your questions relate to the authority to contract with respect to the county jail's operation. The statutory scheme generally charges "[t]he commissioners court of a county [to] provide safe and suitable jails for the county." TEX. LOC. GOV'T CODE ANN. § 351.001(a) (Vernon 1999). Under Local Government Code chapter 351, subchapter C, which generally provides for the operation of county jails, "[t]he sheriff of each county is the keeper of the county jail. The sheriff shall safely keep all prisoners committed to the jail by a lawful authority, subject to an order of the proper court." *Id.* § 351.041(a). "The sheriff may appoint a jailer to operate the jail and meet the needs of the prisoners, but the sheriff shall continue to exercise supervision and control over the jail." *Id.* § 351.041(b). Absent an express statute, the authority to enter into contracts regarding the county jail's operation rests with the commissioners court. *See, e.g.*, Tex. Att'y Gen. Op. No. DM-111 (1992) at 2 (the commissioners court has authority to contract with a licensed physician to provide medical services to inmates incarcerated in county jails, and the sheriff has authority to schedule medical services for the county jails); Tex. Att'y Gen. LO-97-030, at 2 (concluding that the commissioners court, not the sheriff, has authority to contract regarding the provision of telephone services to jail inmates); *see also* Tex. Att'y Gen. Op. No. GA-0059 (2003) at 2 (approving Attorney General Letter Opinion 97-030 to the extent it concludes that, "because the provision of telephone services to inmates does not fall within section 351.0415 [of the Local Government Code], 'a sheriff has no contracting authority regarding the provision of telephone service to inmates'").

We note that 18 U.S.C. § 4002 authorizes the United States Attorney General to "contract, for a period not exceeding three years, with the *proper authorities of* any State, Territory, or political subdivision thereof, for the imprisonment, subsistence, care, and proper employment of [federal prisoners]." 18 U.S.C. § 4002 (2000) (emphasis added); *see also id.* § 4013(a)(3) ("The Attorney General, in support of United States prisoners in non-Federal institutions, is authorized to make payments from funds appropriated for Federal prisoner detention for . . . the housing, care, and security of persons held in custody of a United States marshal pursuant to Federal law under agreements with State or local units of government or contracts with private entities."). In addition, 18 U.S.C. § 4013(b) provides that the United States Attorney General,

> in support of Federal prisoner detainees in non-Federal institutions, is authorized to make payments . . . for entering into contracts or

cooperative agreements with any State, territory, or political subdivision thereof, for the necessary construction, physical renovation, acquisition of equipment, supplies, or materials required to establish acceptable conditions of confinement and detention services in any State or local jurisdiction which agrees to provide guaranteed bed space for Federal detainees within that correctional system.

*Id.* § 4013(b). We have not located any federal statute controlling which officials would constitute the proper authorities of any "State, Territory, or political subdivision" under section 4002 or 4013. Sections 4002 and 4013 appear to defer to state law in this regard.

You assert that section 351.043 of the Local Government Code authorizes a county sheriff to enter into a contract to house federal prisoners in the county jail. Section 351.043 provides in pertinent part as follows:

(a) The sheriff or jailer may receive into the county jail a federal prisoner delivered by a federal law enforcement officer unless the sheriff or jailer determines that receipt of the prisoner may violate a state or federal court order, a statute, or a rule of the Commission on Jail Standards or the Texas Board of Criminal Justice.

(b) The sheriff or jailer shall safely keep the prisoner until the prisoner is transferred or discharged by due course of law.

(c) The federal law enforcement officer on whose authority the prisoner is received and kept is directly and personally liable to the sheriff or jailer for the jail fees and other costs incurred in keeping the prisoner. The fees and costs shall be estimated according to laws regulating similar fees and costs in other cases.

TEX. LOC. GOV'T CODE ANN. § 351.043 (Vernon 1999).[2]

No court has addressed whether section 351.043 authorizes a sheriff to enter into a contract to house federal prisoners. In a 1990 letter opinion, however, this office concluded that section 351.043 did not authorize a sheriff to enter into a contract to house federal prisoners from Washington, D.C. *See* Tex. Att'y Gen. LO-90-95, at 4-5. Attorney General Letter Opinion 90-95 observed that when the legislature intends to authorize a sheriff to enter into a contract, it does so expressly, as it has for example in section 351.0415 regarding jail commissary contracts. *See id.* at 5; *see also* TEX. LOC. GOV'T CODE ANN. § 351.0415 (Vernon Supp. 2004). The letter opinion also

---

[2]*See also* TEX. LOC. GOV'T CODE ANN. § 351.043(d) (Vernon 1999) ("In this section, 'federal law enforcement officer' has the meaning assigned by 5 U.S.C. Section 8331(20)."); 5 U.S.C. § 8331(20) (2000) (defining "law enforcement officer" to mean "an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, including an employee engaged in this activity who is transferred to a supervisory or administrative position").

noted that the predecessor provisions to section 351.043 required a sheriff to receive federal prisoners. *See* Tex. Att'y Gen. LO-90-95, at 4. The legislature amended the statute in 1981 to provide that the sheriff "may receive" federal prisoners. *See id.; see also* Act of May 19, 1981, 67th Leg., R.S., ch. 241, § 1, 1981 Tex. Gen. Laws 603. Citing the 1981 legislative history, the letter opinion concluded that "[t]he substitution of the phrase 'shall receive' for the phrase 'may receive' was not intended by the legislature to [a]ffect anything other than to no longer impose on the county sheriff the mandatory duty to admit federal prisoners into the county jail." Tex. Att'y Gen. LO-90-95, at 4-5.

We conclude that Letter Opinion 90-95 correctly construed section 351.043. A sheriff must have authority to keep a prisoner. *See* TEX. LOC. GOV'T CODE ANN. § 351.041(a) (Vernon 1999) ("The sheriff shall safely keep all prisoners *committed to the jail by a lawful authority*, subject to an order of the proper court.") (emphasis added). On its face, section 351.043 merely provides legal authority for a sheriff or jailer to receive and keep a federal prisoner in the county jail. At most, it authorizes a sheriff or jailer to house and keep individual federal prisoners as requested by a federal officer on a case-by-case basis. It does not authorize a sheriff to enter into a contract committing the county to house federal prisoners, reserving beds in the county jail for federal use over a term of years. *See id.* § 351.043. Indeed, the statute authorizes the sheriff *or the jailer* to keep and house a federal prisoner. *See id.* Under section 351.041(b), the jailer is an employee subject to the sheriff's supervision and control. *See id.* § 351.041(b) ("The sheriff may appoint a jailer to operate the jail and meet the needs of the prisoners, *but the sheriff shall continue to exercise supervision and control over the jail.*") (emphasis added); *see also De la Garza v. State*, 579 S.W.2d 220, 223 (Tex. Crim. App. 1979) (concluding that statutory predecessor to section 351.041 "authorizes the Sheriff to legally impose such restriction on his jailers"); Tex. Att'y Gen. Op. No. JM-1047 (1989) at 2 ("A jailer is employed by the sheriff and subject to his supervision and control in matters involving his duties as jailer."). If we were to construe section 351.043 to authorize the sheriff to enter into a contract, we would also have to conclude that the statute vests the jailer with the same authority. We doubt the legislature intended to authorize a jailer, an unelected county employee under the sheriff's control, to enter into contracts obligating the county to house federal prisoners in the county jail. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998) ("In construing a statute, . . . a court may consider among other matters the: (1) object sought to be attained [and] (5) consequences of a particular construction . . . ."). Finally, while the legislature revisited section 351.043 in 1991 and 1997, on neither occasion did it reject the 1990 letter opinion's interpretation of the statute by amending section 351.043 to authorize sheriffs to enter into contracts.[3]

You disagree with Letter Opinion 90-95 for several reasons. First, you assert that while the legislature may not have intended section 351.043 to authorize a sheriff to enter into a contract, "the reality of the [1981] change had the effect of creating a need for contractual obligations to ensure bed-space for federal needs." Request Letter, *supra* note 1, at 2. You further assert that the legislature could not have intended to authorize the commissioners court to enter into such a contract because the commissioners court does not have authority over housing federal prisoners. *See id.* at 3.

---

[3]*See* Act of Aug. 25, 1991, 72d Leg., 2d C.S., ch. 10, § 11.16, 1991 Tex. Gen. Laws 180, 207; Act of May 10, 1997, 75th Leg., R.S., ch. 259, § 10, 1997 Tex. Gen. Laws 1196, 1201.

However, to the extent Texas statutes address the issue, they indicate that the commissioners court must have some authority over whether federal prisoners will be kept in the county jail. Sections 351.001 of the Local Government Code requires a commissioners court to "provide safe and suitable jails for the county," TEX. LOC. GOV'T CODE ANN. § 351.001(a) (Vernon 1999), which "must comply with the minimum standards and the rules and procedures of the Commission on Jail Standards," *id.* § 351.002. Section 511.0093(b) of the Government Code authorizes the Commission on Jail Standards (the "Commission") to adopt

> rules *regulating the number of federal prisoners* and prisoners from jurisdictions other than Texas *that are housed in a county jail,* a municipal jail, or a correctional facility operated by a private vendor under contract with a municipality if the jail or correctional facility houses state, county, or municipal prisoners or prisoners of another state of the United States.

TEX. GOV'T CODE ANN. § 511.0093(b) (Vernon 1998) (emphasis added). Section 511.009 charges both the sheriff *and* the commissioners court with reporting to the Commission regarding the county's compliance with Commission standards. *See id.* § 511.009(a)(8), (14) (Vernon Supp. 2004). Given that the legislature has charged each commissioners court with the duty to provide for a jail that complies with Commission standards and to report to the Commission, the legislature must intend for commissioners courts to exercise some authority over whether and to what degree the jail will house federal inmates.

In addition, section 511.0094 of the Government Code, which excepts from Commission regulation a correctional facility housing only federal prisoners, suggests that the commissioners court, not the sheriff, would enter into a contract with the federal government to house federal prisoners:

> The provisions of this chapter do not apply to a correctional facility contracting to house only federal prisoners and operating *pursuant to a contract between a unit of the federal government and a county,* a municipality, or a private vendor. If a county, municipality, or private vendor contracts to house or begins to house state, county, or municipal prisoners or prisoners of another state of the United States, it shall report to the commission before placing such inmates in a correctional facility housing only federal prisoners.

*Id.* § 511.0094 (emphasis added).

You also rely on the language of section 351.043(c): "The federal law enforcement officer on whose authority the prisoner is received and kept is directly and personally liable to the sheriff or jailer for the jail fees and other costs incurred in keeping the prisoner." TEX. LOC. GOV'T CODE ANN. § 351.043(c) (Vernon 1999). You believe that because the federal officer is liable for fees only to the sheriff (or the jailer) and not the commissioners court, any authority to enter into a contract to house federal prisoners must rest with the sheriff. *See* Request Letter, *supra* note 1, at 4.

However, section 351.043(c) on its face requires a federal officer to pay fees to the sheriff; it does not vest the sheriff with the authority to enter into a contract.

Moreover, the fact that the federal officer is liable to the sheriff or jailer rather than the commissioners court for fees is not legally significant. The statutory predecessors to section 351.043(c) date from before the 1948 adoption of article XVI, section 61 of the Texas Constitution generally abolishing fees of office[4] and requiring all counties to pay sheriffs on a salary basis. *See* TEX. CONST. art. XVI, § 61(c) ("it shall be mandatory upon the Commissioners Courts to compensate all sheriffs . . . on a salary basis"). Even prior to this requirement, courts held that fees received by sheriffs for boarding federal prisoners were fees of office, accountable to the commissioners court in determining the maximum salary sheriffs could retain for their services. *See Orndorff v. El Paso County*, 295 S.W. 219, 221 (Tex. Civ. App.–El Paso 1927, writ ref'd); *Binford v. Harris County*, 261 S.W. 535, 537 (Tex. Civ. App.–Galveston 1924, writ ref'd). And significantly, the Texas Constitution and the Local Government Code now require county sheriffs and other officials paid on a salary basis to deposit any fees of office, fees they collect for performing their official duties, in the county treasury. *See* TEX. CONST. art. XVI, § 61(d) ("All fees earned by district, county and precinct officers shall be paid into the county treasury where earned for the account of the proper fund . . . ."); TEX. LOC. GOV'T CODE ANN. §§ 154.002 (Vernon 1999) (a district, county, or precinct officer "who is paid on a salary basis receives the salary instead of . . . fees . . . the officer would otherwise be authorized to keep"), 154.003 ("A district, county, or precinct officer who is paid an annual salary shall charge and collect in the manner authorized by law all fees, commissions, and other compensation permitted for official services performed by the officer. The officer shall dispose of the collected money as provided by Subchapter B, Chapter 113."); *see also id.* § 113.021(a) ("The fees, commissions, funds, and other money belonging to a county shall be deposited with the county treasurer by the officer who collects the money."). Under these provisions, a sheriff would be required to deposit in the county treasury any money paid by the federal government as a section 351.043 fee.

In sum, we conclude that section 351.043 does not authorize a sheriff to contract to house federal prisoners in the county jail. As no other statute vests such authority in a sheriff, we conclude that a sheriff is not authorized to enter into a contract to house federal prisoners in the county jail.

2.     *Commissioners Court Approval Generally*

In a related question in your supplemental letter, you ask more generally about the authority of the sheriff or any other elected official "to sign contracts and encumber the county without approval of the commissioners court." Supplemental Request Letter, *supra* note 1, at 1 (question 1); *see also* Request Letter, *supra* note 1, at 1 (question 1 asking about the authority of

---

[4]*See* Act of June 5, 1947, 50th Leg., R.S., H.R.J. Res. No. 36, 1947 Tex. Gen. Laws 1193 (proposing a constitutional amendment to require commissioners courts to compensate on a salary basis (i) constables, deputy constables, and precinct law enforcement officers beginning January 1, 1949, and (ii) in counties having a population of less than 20,000, sheriffs, deputy sheriffs, county law enforcement officers including sheriffs also performing the duties of assessor and collector of taxes and their deputies beginning January 1, 1949). The statutory predecessors to section 351.043 date from 1856. *See* TEX. LOC. GOV'T CODE ANN. § 351.043 historical and statutory note (Vernon 1999).

"any elected official . . . to enter into a binding contract with the [USMS] to house federal prisoners in the county jail").

As we have discussed, in the absence of a statute authorizing another county official to enter into a contract,[5] the commissioners court has the sole authority to enter into contracts binding the county. *See supra* p. 3. Moreover, individual commissioners court members have no authority to bind the county by their separate action; only an action taken by the commissioners court acting as an official body can bind the county. *See Canales v. Laughlin*, 214 S.W.2d 451, 455 (Tex. 1948); *Gano v. Palo Pinto County*, 8 S.W. 634, 635 (Tex. 1888). A contract made by a county is valid and binding only if made under the authority of a resolution or order duly passed at a meeting of the commissioners court and entered in the minutes. *See, e.g., Stratton v. County of Liberty*, 582 S.W.2d 252, 254 (Tex. Civ. App.–Beaumont 1979, writ ref'd n.r.e.); *Wilson v. County of Calhoun*, 489 S.W.2d 393, 397 (Tex. Civ. App–Corpus Christi, 1972, writ ref'd n. r.e.); *Morrison v. Kohler*, 207 S.W.2d 951, 954 (Tex. Civ. App.–Beaumont 1947, writ ref'd n.r.e.).

## B.     Authority to Accept Federal Surplus Property for the County

Next, you ask about the authority of the sheriff to accept federal surplus property pursuant to the USMS contract. *See* Request Letter, *supra* note 1, at 1 (question 2). We note that chapter 2175 of the Government Code designates the Texas Building and Procurement Commission as the state agency to dispose of federal surplus property pursuant to a program under 40 U.S.C. § 549. *See* TEX. GOV'T CODE ANN. §§ 2175.361-.367 (Vernon 2000 & Supp. 2004). Because your letter indicates that the USMS rather than the Texas Building and Procurement Commission transferred the property, we do not address chapter 2175.

You have not identified the federal statute or regulations pursuant to which the USMS transferred the property.[6] Nor have we located any federal statute or regulation governing which

---

[5]For statutes that authorize individual county officials other than the sheriff to execute contracts, *see, e.g.,* TEX. LOC. GOV'T CODE ANN. §§ 262.011(d) (Vernon Supp. 2004) ("The county purchasing agent shall purchase all supplies, materials, and equipment required or used, and contract for all repairs to property used, by the county or a subdivision, officer, or employee of the county, except purchases and contracts required by law to be made on competitive bid. A person other than the county purchasing agent may not make the purchase of the supplies, materials, or equipment or make the contract for repairs."), 263.001(a) (Vernon 1999) ("The commissioners court of a county, by an order entered in its minutes, may appoint a commissioner to sell or lease real property owned by the county. The sale or lease must be made at a public auction held in accordance with this section unless this chapter provides otherwise."), (c) "(If the real property is sold, a deed that is made on behalf of the county by the appointed commissioner in conformance with the order entered under Subsection (a) and that is properly acknowledged, proved, and recorded is sufficient to convey the county's interest in the property."), 411.006(b) ("If the commissioners court determines that a seawall right-of-way should be donated, the county judge may convey the property in accordance with the order of the commissioners court.").

[6]For example, federal law generally provides that "the Administrator of General Services shall supervise and direct the disposition of surplus property in accordance with this subtitle." 40 U.S.C. § 541 (2000). "An executive agency designated or authorized by the Administrator of General Services to dispose of surplus property may do so by sale, exchange, lease, permit, or transfer, for cash, credit, or other property, with or without warranty, on terms and conditions that the Administrator considers proper. The agency may execute documents to transfer title or other interest in the property and may take other action it considers necessary or proper to dispose of the property under this chapter."

(continued...)

official in a state political subdivision is authorized to accept such property. Of course, if a federal statute or regulation expressly authorizes a county sheriff or any other official to accept federal surplus property, it may control. *See generally* U.S. CONST. art. VI, cl. 2 (Supremacy Clause); *Delta Airlines, Inc. v. Black*, 116 S.W.3d 745, 748 (Tex. 2003) (discussing federal preemption of state law).

Given our conclusion that a sheriff is not authorized to enter into a contract to house federal prisoners in the county jail, it follows that such a contract would not authorize the sheriff to accept federal surplus property. Moreover, we believe that, in the absence of a controlling federal statute, title to any personal property paid by the federal government as consideration for housing federal prisoners in the county jail would vest in the county rather than the sheriff, the jail, or the sheriff's department. As we have discussed, in the event a sheriff or jailer kept and housed a federal prisoner and received a monetary fee from a federal officer under section 351.043(c) of the Local Government Code, the sheriff or jailer would be required to account for the fee as a fee of office and deposit it in the county treasury. *See* Part II.A.1, *supra* p. 7.[7] To the extent the USMS transfers federal surplus property as consideration pursuant to a contract to house federal prisoners in the county jail, that consideration, like any monetary consideration, would also be accountable as a fee of office. Thus, we believe that title to any property paid by a federal official as a fee under section 351.043(c) would belong to the county.

In addition, we note that the legislature has specifically vested sheriffs with control over money from certain defined sources. *See, e.g.,* TEX. LOC. GOV'T CODE ANN. § 351.0415(b) (Vernon Supp. 2004) (providing a sheriff with "exclusive control of the commissary funds"); TEX. CODE CRIM. PROC. ANN. art. 59.06(c)(3) (Vernon Supp. 2004) (providing for the deposit of forfeited funds in "a special fund in the county treasury if distributed to a county law enforcement agency, to be used solely for law enforcement purposes"). The legislature has not provided the sheriff with exclusive

---

[6](...continued)

*Id.* § 543. Section 553, 40 U.S.C., provides that the Administrator of General Services, "in the Administrator's discretion and under regulations that the Administrator may prescribe, may transfer or convey to a State, or political subdivision or instrumentality of a State, surplus real and related personal property that – (1) the Attorney General determines is required by the transferee or grantee for correctional facility use under a program approved by the Attorney General for the care or rehabilitation of criminal offenders [or] (2) the Attorney General determines is required by the transferee or grantee for law enforcement purposes." *Id.* § 553(b)(1)-(2). A federal regulation provides for conveying "surplus real and related personal property for: (a) Correctional facility purposes, if the Attorney General has determined that the property is required for such purposes and has approved an appropriate program or project for the care or rehabilitation of criminal offenders [or] (b) Law enforcement purposes, if the Attorney General has determined that the property is required for such purposes . . . ." 41 C.F.R. § 102-75.750 (2003), WL 41 C.F.R. s102-75.750.

[7]*See also* TEX. LOC. GOV'T CODE ANN. §§ 113.003 (Vernon 1999) ("The county treasurer shall receive all money belonging to the county from whatever source it may be derived."), 154.002 ("A district, county, or precinct officer who is paid on a salary basis receives the salary instead of all fees, commissions, and other compensation the officer would otherwise be authorized to keep, except as otherwise provided by this subchapter."), 154.003 ("A district, county, or precinct officer who is paid an annual salary shall charge and collect in the manner authorized by law all fees, commissions, and other compensation permitted for official services performed by the officer. The officer shall dispose of the collected money as provided by Subchapter B, Chapter 113."); *see generally* Tex. Att'y Gen. Op. No. GA-0059 (2003) (concluding that revenues generated by an inmate telephone contract must be paid into the county treasury and may be used for any legitimate county purpose).

authority over payments made by the federal government for housing federal prisoners in the county jail in section 351.043, and no other statute supports the contention that the sheriff would control property paid in lieu of a monetary fee.

Finally, we note that the federal law pursuant to which federal surplus property is transferred to the county may require that the property be used by the county for certain limited purposes, such as law enforcement or corrections. *See* note 6, *supra* p. 8. Thus, although title to federal surplus property may not vest in the sheriff, the jail, or the sheriff's department, the sheriff, as the chief county law enforcement officer and keeper of the county jail, would be the county official to use such property.

## C.    Authority to Accept Donated Property

In a related question you ask whether "the Smith County Sheriff, or any elected official, [has] the authority to accept donated property without the approval from the Commissioners Court?" Supplemental Request Letter, *supra* note 1, at 1 (question 3). We answer this question generally and not with regard to any particular property that has been donated to the county or any county office.

Local Government Code section 81.032 generally provides that "[t]he commissioners court may accept a gift, grant, donation, bequest, or devise of money or other property on behalf of the county for the purpose of performing a function conferred by law on the county or a county officer." TEX. LOC. GOV'T CODE ANN. § 81.032 (Vernon Supp. 2004); *see also* TEX. TRANSP. CODE ANN. §§ 252.109 (Vernon 1999) ("A commissioners court or the road commissioners may accept donations of labor, money, or other property to aid in building or maintaining roads in the county."), 252.214 ("A commissioners court may accept donations of labor, money, or other property to aid in building or maintaining roads in the county."). Prior to section 81.032's enactment, this office had concluded that absent such express legislative authority, counties could not accept gifts of money or other personal property to use for county purposes. *See generally* Tex. Att'y Gen. Op. No. JC-0443 (2001) at 2; *see also* Tex. Att'y Gen. LO-97-032, at 2 (concluding that county may not accept gifts of videotapes, books, or cash on behalf of alternative dispute center); Tex. Att'y Gen. LO-88-106, at 6 (concluding that county may not collect funds and disburse them to local law enforcement agencies to combat drug abuse in county).

By its express terms, section 81.032 authorizes a commissioners court to accept a donation of property to be used by the sheriff in performing that office's statutory functions. *See* TEX. LOC. GOV'T CODE ANN. § 81.032 (Vernon Supp. 2004) (authorizing a commissioners court to accept a donation of property on behalf of the county "for the purpose of performing a function conferred by law on the county or a county officer"). No statute authorizes a sheriff to accept donated property. In the absence of a specific statute authorizing the sheriff, or any other county official, to accept donated property, the commissioners court is the proper body to accept property donations on the county's behalf.

Given that your letter suggests that the USMS transferred the federal surplus property at issue as consideration for housing federal inmates under the contract, *see* Request Letter, *supra* note 1, at

8-9, we do not reach the question whether section 81.032 of the Local Government Code applies to federal surplus property transferred to a county as something other than consideration. We also note that to the extent there is any dispute regarding whether the USMS transferred the property to the county as consideration for services performed by the county pursuant to a contract, resolution of that issue would involve questions of fact and would be beyond the purview of an attorney general opinion. *See* Tex. Att'y Gen. Op. Nos. GA-0078 (2003) at 2 (stating that this office does not construe particular contracts), GA-0003 (2002) at 1 (stating that the opinion process does not determine facts).

### D.     Authority to Dispose of County Property

With respect to the USMS contract, you ask "[w]ho may dispose of surplus items provided to a county agency by the federal government and must they be included in county inventory?" Request Letter, *supra* note 1, at 1 (question 3). In your request letter, you inform us that the USMS provides two kinds of surplus property: accountable property for which USMS approval is required prior to disposal by the grantee and non-accountable property, which "is fully disposable upon transfer to the agency." *Id.* at 13. In the absence of a controlling federal statute, title to surplus property paid as consideration for housing federal prisoners in the county jail would vest in the county rather than the sheriff, the sheriff's department, or the jail. *See* Part II.B, *supra* p. 8. We see no reason why such property would not be included in county inventory or disposed of like any other county property, provided that the property has been used by the county as required by any applicable federal law or transfer term. *See generally* TEX. LOC. GOV'T CODE ANN. §§ 112.005(a) (Vernon 1999) (requiring a county auditor to "maintain an account for each county, district, or state officer authorized or required by law to receive or collect money or other property that is intended for the use of the county or that belongs to the county"), 262.011(i) (Vernon Supp. 2004) (requiring a county purchasing agent to file "an inventory of all the property on hand and belonging to the county and each subdivision, officer, and employee of the county. The county auditor shall carefully examine the inventory and make an accounting for all property purchased or previously inventoried and not appearing in the inventory."); *see also* note 6, *supra* p. 8. Moreover, even if title has not been transferred to the county or the county must obtain USMS approval before disposing of the property, federal surplus property received by a county officer for county use would be included in county inventory. *See, e.g.,* TEX. LOC. GOV'T CODE ANN. §§ 112.005(a) (Vernon 1999) (requiring a county auditor to "maintain an account for each county, district, or state officer authorized or required by law to receive or collect money or other *property that is intended for the use of the county* or that belongs to the county") (emphasis added), 112.006(a) ("The county auditor has general oversight of the books and records of a county, district, or state officer authorized or required by law to receive or collect money or other *property that is intended for the use of the county* or that belongs to the county.") (emphasis added).

In a related but more general question, you ask, "Does the Smith County Sheriff, or any elected official, have the authority to donate, sell, trade or destroy County property without the approval of the Commissioners Court?" Supplemental Request Letter, *supra* note 1, at 1 (question 2). It is difficult for this office to answer such a broad question. We note, however, that Local Government Code provisions governing the sale or donation of county personal property generally

vest the authority to sell or donate property in the commissioners court.[8]  In particular, section 263.152 of the Local Government Code authorizes a commissioners court to sell, trade in, donate, destroy, or otherwise dispose[9] of county salvage or surplus personal property.[10]  The authority to donate, sell, trade, or destroy particular county property would need to be resolved on a case-by-case basis.

---

[8]*See, e.g.,* TEX. GOV'T CODE ANN. § 1477.070(a) (Vernon 2000) ("The commissioners court may sell, deliver, and distribute any water of the project that is not needed for county purposes to a municipal corporation or political subdivision of this state, or an individual, corporation, or company under terms that the court determines are in the best interests of the county."); TEX. HEALTH & SAFETY CODE ANN. §§ 263.029(a) (Vernon 2001) ("A county may sell or lease all or part of a county hospital or medical or other health facility operated by the county, including real property, if the commissioners court of the county, by order entered in the minutes of the court, finds that the sale or lease is in the best interest of the county."), 281.052(a) ("The commissioners court of a county in which a [hospital] district is created under this chapter may sell real or personal property in order to enter into a contract . . . .").

[9]*See* TEX. LOC. GOV'T CODE ANN. § 263.152(a) (Vernon Supp. 2004) ("The commissioners court of a county may: (1) periodically *sell* the county's surplus or salvage property by competitive bid or auction, except that competitive bidding or an auction is not necessary if the purchaser is another county or a political subdivision within the county that is selling the surplus or salvage property; (2) offer the property as a *trade-in* for new property of the same general type if the commissioners court considers that action to be in the best interests of the county; (3) *order any of the property to be destroyed or otherwise disposed* of as worthless if the commissioners court undertakes to sell that property under Subdivision (1) and is unable to do so because no bids are made; or (4) *dispose of the property by donating* it to a civic or charitable organization located in the county if the commissioners court [makes certain findings].") (emphasis added).

[10]*See id.* § 263.151(1) (Vernon 1999) (defining "salvage property" to mean "personal property, other than items routinely discarded as waste, that because of use, time, accident, or any other cause is so worn, damaged, or obsolete that it has no value for the purpose for which it was originally intended"), (2) (defining "surplus property" to mean "personal property that: (A) is not salvage property or items routinely discarded as waste; (B) is not currently needed by its owner; (C) is not required for the owner's foreseeable needs; and (D) possesses some usefulness for the purpose for which it was intended").

## S U M M A R Y

In the absence of a statute authorizing another county official to enter into a contract, the commissioners court has the sole authority to enter into contracts binding the county.  Section 351.043 of the Local Government Code does not authorize a county sheriff to contract to house federal prisoners in the county jail.

Generally, a contract made by a county is valid and binding only if made under the authority of a resolution or order duly passed at a meeting of the commissioners court and entered in the minutes.

Under state law, a county sheriff is not authorized to contract for or to accept federal surplus property as consideration for housing federal prisoners in the county jail.  In the absence of a controlling federal statute, title to any personal property paid by the federal government as consideration for housing federal prisoners in the county jail would vest in the county rather than the sheriff, the jail, or the sheriff's department.

Section 81.032 of the Local Government Code generally authorizes the commissioners court of a county to accept donations on behalf of the county and would authorize a commissioners court to accept a donation of property to be used by the sheriff in performing that office's statutory functions.

Generally, in the absence of a controlling federal statute, federal surplus property paid to the county as consideration for housing federal prisoners in the county jail would be included in county inventory and disposed of like any other county property. Even if title has not been transferred to the county or the county must obtain federal agency approval before disposing of the property, federal surplus property received by a county officer for county use would be included in county inventory. While section 263.152 of the Local Government Code generally authorizes a commissioners court to sell, trade in, donate, destroy or otherwise dispose of county salvage or surplus personal property, the authority to donate, sell, trade, or destroy particular county property would need to be resolved on a case-by-case basis.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee