

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

September 12, 2005

Mr. Rex Emerson
Kerr County Attorney
County Courthouse, Suite BA-103
700 Main Street
Kerrville, Texas 78028

Opinion No. GA-0354

Re: Whether an elected public official may accept payment for completing a term as president of a private association of elected public officials (RQ-0324-GA)

Dear Mr. Emerson:

You ask whether an elected public official may accept payment for completing a term as president of a private association of elected public officials and whether the association may offer such a payment.[1]

Your question concerns a payment the County and District Clerks Association of Texas ("CDCAT" or the "Association") traditionally makes to its outgoing president. Request Letter, *supra* note 1, at 1. The Association is a private, nonprofit corporation.[2] Its bylaws state that the Association's purpose is "to promote professional standards, to provide a means for the education of its members regarding the statutory and constitutional duties of the offices of the county clerk and the district clerk, and to participate in the legislative, judicial and executive processes of state government beneficial in the performance of the members' duties." *See* Bylaws, *supra* note 2, at 1.

The Association has five classes of members, of whom only the "active member" class possesses voting rights. *Id.* at 1-2. Active members are those "elected or duly appointed county clerks, district clerks, and county and district clerks, presently serving in their respective offices," who are current on their dues and continuing education requirements. *Id.* at 2. The bylaws

---

[1]*See* Letter from Honorable Rex Emerson, Kerr County Attorney, to Honorable Greg Abbott, Texas Attorney General (Mar. 9, 2005) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]*See* Bylaws of the County and District Clerks Association, A Non-Profit Corporation (Jan. 15, 2002) (on file with Opinion Committee, *also available at* http://www.texasclerks.org/pdf/Bylaws.pdf) [hereinafter Bylaws]. *See also* Brief from Edward M. Shack, on behalf of the County and District Clerks Association of Texas, to Honorable Greg Abbott, Texas Attorney General (Apr. 21, 2005) (on file with Opinion Committee) (noting the Association's status as a nonprofit corporation under section 501(c)(3) of the Internal Revenue Code) [hereinafter CDCAT Brief]; Tex. Att'y Gen. LO-97-077, at 3 (discussing CDCAT's status as a private association).

further state that the Association's "officers shall be from the active membership." *Id.* at 4. The Association's officers are president, vice president, secretary, treasurer, and the immediate past president. *Id.* These officers comprise the executive board, which is responsible for everyday operations. *Id.* at 5. The bylaws recommend that the Association's offices alternate between county and district clerks, with a county and district clerk serving as one of the officers at least every fifth year. *Id.*

The president is the Association's chief executive officer. *Id.* The Association informs us that the president, "in general supervises and controls all the business and affairs of the Association," and that the president's duties include:

- liaison with the Legislature
- chairing meetings of the Executive Board
- chairing and conducting meetings of the members and the Board of Directors
- appointing committees within the Association
- developing strategic and long term plans
- appointing numerous officers and positions within the Association
- promoting the purpose of the [A]ssociation
- exercising any and all residual authority of the Association.

CDCAT Brief, *supra* note 2, at 1. The bylaws authorize reimbursement of directors' expenses, but state that "[a]ny other compensation is prohibited unless expressly approved by the board of directors." Bylaws, *supra* note 2, at 20. You state that traditionally, the Association has paid $5,000 to the outgoing president. Request Letter, *supra* note 1, at 1. You are concerned that the payment may violate the Penal Code because it may be a prohibited honorarium under section 36.07 and a prohibited gift under section 36.09. *Id.* at 2; *see* TEX. PEN. CODE ANN. §§ 36.07(a), .09(a) (Vernon 2003).[3] The Association, on the other hand, disputes that the payment is an honorarium, stating that instead it is legitimate compensation for services rendered as president of a private association, not rendered in the person's capacity as an elected public official. *See* CDCAT Brief, *supra* note 2, at 1. Thus, we construe Penal Code sections 36.07 and 36.09 to determine if they prohibit such payments.

Statutory construction should focus initially "'on the literal text of the statute in question' because 'the text of the statute is the law.'" *Getts v. State*, 155 S.W.3d 153, 155 (Tex. Crim. App. 2005) (quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991), the Court of Criminal Appeals' "leading case in statutory interpretation"). A statute's words and phrases are to be read in context and given their common meaning unless they have acquired a technical or particular meaning by definition or otherwise. *See Sanchez v. State*, 995 S.W.2d 677, 683 (Tex. Crim. App. 1999) (applying the rule of construction in TEX. GOV'T CODE ANN. § 311.011(a)-(b) (Vernon 2005) to

---

[3]Both offenses are Class A misdemeanors. TEX. PEN. CODE ANN. §§ 36.07(c), .09(b) (Vernon 2003). The punishment for a Class A misdemeanor is a fine not exceeding $4,000, confinement in jail for not longer than one year, or both. *Id.* § 12.21.

construe section 39.03 of the Penal Code, the offense of official oppression).[4] If a statute's language is clear and unambiguous the statute is construed according to its plain meaning. *Getts*, 155 S.W.3d at 155. Certain "extra-textual factors" such as legislative history may be considered only when a statute is ambiguous or when a literal interpretation would lead to absurd results. *See id.* at 155; *Ex parte Spann*, 132 S.W.3d 390, 393 (Tex. Crim. App. 2004).

We consider sections 36.07 and 36.09 in the context of chapter 36 of the Penal Code as a whole. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). Chapter 36, entitled "Bribery and Corrupt Influences," deals generally with offenses involving a "public servant," who is an "officer, employee, or agent of government," which includes "a county, municipality, or political subdivision of the state." *See* TEX. PEN. CODE ANN. § 1.07(24)(B), (41)(A) (Vernon Supp. 2004-05). Chapter 36 defines four terms, only one of which, the broad definition of "benefit," is pertinent to your inquiry. *See id.* § 36.01(3) (Vernon 2003) (a benefit in the chapter is "anything reasonably regarded as pecuniary gain or pecuniary advantage"). Chapter 36 proscribes conduct such as bribery, section 36.02; coercion of a public servant or voter, section 36.03; attempts to influence the outcome of certain proceedings, section 36.04; and similar offenses. *See id.* §§ 36.02-.06 (Vernon 2003 & Supp. 2004-05). As discussed in more detail below, section 36.07 prohibits public servants from accepting certain honoraria. *See id.* § 36.07 (Vernon 2003). Section 36.08 prohibits a public servant from accepting any benefit from a person subject to the jurisdiction of the public servant or the public servant's employer. *See id.* § 36.08. Section 36.09 prohibits a person from offering or conferring a benefit on a public servant that the public servant cannot legally accept. *See id.* § 36.09. Section 36.10 provides that sections 36.08 and 36.09 do not apply to certain benefits, most notably to any benefit "for which a [public servant] gives legitimate consideration in a capacity other than as a public servant." *See id.* § 36.10(a)(1) (Vernon Supp. 2004-05).

We first consider the offense of accepting an honorarium, proscribed in Penal Code section 36.07(a) as follows:

> A public servant commits an offense if the public servant solicits, accepts, or agrees to accept an honorarium in consideration for services that the public servant would not have been requested to provide but for the public servant's official position or duties.

*Id.* § 36.07(a) (Vernon 2003). The term "honorarium" is not defined in the Penal Code, and the word's only other appearance in the current statutes sheds little light on its meaning. *See* TEX. GOV'T CODE ANN. § 2205.036(b)(3) (Vernon 2000) (providing that the State Aircraft Pooling Board shall not provide air transportation to a passenger who "will perform a service or has performed a service for which the passenger is to receive an honorarium, unless the passenger reimburses the

---

[4] The Penal Code provides, "Unless a different construction is required by the context, Sections 311.011, 311.012, 311.014, 311.015, and 311.021 through 311.032 of Chapter 311, Government Code (Code Construction Act), apply to the construction of this code." TEX. PEN. CODE ANN. § 1.05(b) (Vernon 2003).

board for the cost of transportation"). Also, we have not located a Texas judicial decision that construes current section 36.07 or defines "honorarium" in any other context.[5]

This office has reviewed the common meaning of the term "honorarium":

> An honorarium . . . is sometimes defined as a payment or reward, usually in recognition of services on which custom or propriety forbids any fixed business price to be set. It may be a free gift or gratuitous payment, as distinguished from hire or compensation for service[s]. . . . Thus, the word is commonly used to embrace both the concept of gift and of compensation.

Tex. Att'y Gen. Op. No. H-551 (1975) at 4 (citations omitted), *see also* Tex. Att'y Gen. Op. Nos. GA-0256 (2004) at 2-3, DM-397 (1996) at 3-4; Op. Tex. Ethics Comm'n No. 19 (1992) at 2 n.1. Likewise, the Ethics Commission (the "Commission") has noted that an "honorarium" is commonly understood to be "'a payment in recognition of acts or professional services for which custom or propriety forbids a price to be set.'" Op. Tex. Ethics Comm'n No. 401 (1998) at 2 n.1 (quoting definition from RANDOM HOUSE UNABRIDGED DICTIONARY 918 (2d ed. 1993)).

The Commission, authorized to advise about the application of Penal Code chapter 36,[6] has determined that fees for speaking, teaching, and certain other services are included in the term "honorarium." Op. Tex. Ethics Comm'n Nos. 305 (1996) at 1 n.1 (speaking and teaching fees can be an honorarium); 425 (2000) at 2 (severance pay and moving expenses paid to an employee who has accepted state employment may constitute an honorarium); 416 (1999) at 1-2 (payment of a research grant to a legislative employee pursuing a graduate degree may be an honorarium); 294 (1995) (stating that acceptance of payment for teaching may be an honorarium). The Commission has concluded that an honorarium payment "in consideration for services" can be either payment of contractual consideration or payment "in appreciation for" such services. Op. Tex. Ethics Comm'n No. 97 (1992) at 1. And the Commission has determined that a payment may be an improper honorarium regardless of whether the person offering the payment is also the person requesting services. Op. Tex. Ethics Comm'n No. 425 (2000) at 2 n.3. However, the Commission has not attempted to establish the parameters of the term "honorarium" as it appears in section 36.07. Op. Tex. Ethics Comm'n No. 192 (1994) at 2 n.4 (stating that the "Ethics Commission has not considered whether there are circumstances in which a fee may not be an honorarium"); *accord* Op.

---

[5]Formerly, section 36.07 was assigned to the offense of compensating a public official for past official behavior. *See* Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, *amended by* Act of June 2, 1975, 64th Leg., R.S., ch. 342, § 11, 1975 Tex. Gen. Laws 915, *repealed by* Act of May 28, 1983, 68th Leg., R.S., ch. 558, § 3, 1983 Tex. Gen. Laws 3238; *see also Garza v. State*, 579 S.W.2d 220 (Tex. Crim. App. 1979) (upholding conviction of bail bondsman under former section 36.07 for paying a county jailer for referrals). That offense was repealed in 1983, and in 1991, section 36.07 was reassigned to the offense of acceptance of a prohibited honorarium. *See* Act of May 27, 1991, 72d Leg., R.S., ch. 304, § 4.03, 1991 Tex. Gen. Laws 1321-22, *amended by* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586.

[6]*See* TEX. GOV'T CODE ANN. § 571.091(a) (Vernon 2004).

Tex. Ethics Comm'n Nos. 305 (1996) at 2 n.1; 312 (1996) at 2 n.1. For purposes of this opinion, we assume the payment you describe is an honorarium and turn to whether it is prohibited under Penal Code section 36.07.

From the plain language of the statute, whether an honorarium was paid "in consideration for services that the public servant would not have been requested to provide but for the public servant's official position or duties" depends on the motivation of the person or persons requesting the public servant to provide the services. TEX. PEN. CODE ANN. § 36.07(a) (Vernon 2003); *see also* Op. Tex. Ethics Comm'n No. 305 (1996) at 2 n.2. As the Commission has stated, "an honorarium is permissible as long as the public servant's official status was not a deciding factor in the decision to request the public servant to perform the services at issue." *Id.* at 1.

Recently, in Attorney General Opinion GA-0256, this office considered whether section 36.07 applies when a commissioned peace officer receives compensation for working off-duty for a private employer. Tex. Att'y Gen. Op. No. GA-0256 (2004). The opinion concluded that section 36.07 would not apply to a peace officer's typical off-duty employment because generally it is a commissioned officer's experience and training that is of value to a private employer, not the officer's official status with a particular law enforcement agency. *Id.* at 3-4. Similarly, the Commission has determined that the honorarium provision in section 36.09 would not prohibit a city employee from performing services as a fingerprint expert for a defense attorney in another state, based on the assumption "that a fingerprint expert is generally asked to perform services because of his expertise and not because he is employed by a particular city." Op. Tex. Ethics Comm. No. 312 (1996) at 1; *see also* Op. Tex. Ethics Comm. No. 305 (1996) at 1 (university professors may be compensated for performing outside services sought "because of their academic expertise and not because they hold a position at a particular institution").

Here, the Association requires its officers to be active members. Because it is an association of public servants, its officers also will be public servants. But as discussed earlier, whether section 36.07 prohibits an honorarium to a public servant depends on the motivation of the person or persons requesting the public servant to provide the services. *See* Op. Tex. Ethics Comm'n No. 305 (1996) at 2 n.2. The Association selects its president by majority vote of its active members. Although we cannot know the motives of the various Association members when they voted for the president, presumably they considered such factors as pertinent experience and commonality of interest. We believe it unlikely that a person is elected president because the person serves as the clerk of a particular county or district. Moreover, a finder of fact could conclude that a payment made to the outgoing president is for services rendered as president of a private association, unrelated to the person's official position as clerk of a particular county or district. Chapter 36 ("Bribery and Corrupt Influence") does not prohibit a public servant from accepting all compensation from private sources. As the Commission has stated, "Penal Code chapter 36 restricts the acceptance of benefits by [public servants] but permits a [public servant] to accept a fee for work performed in a capacity other than a [public servant] . . . ." Op. Tex. Ethics Comm'n No. 408 (1998) at 1. If a person is elected president of a private association because of the person's skills and abilities to perform the duties of president and not because the person is clerk of a particular county or district, then acceptance of

fair compensation for services as the association's president would not violate Penal Code section 36.07. *See* TEX. PEN. CODE ANN. § 36.07(a) (Vernon 2003).

We next consider your second question – whether a private association violates section 36.09 of the Penal Code by making a payment in consideration of the outgoing president's prior year's services when that person is a county or district clerk and by definition a public servant. Section 36.09 broadly prohibits a person from offering, conferring, or agreeing to confer a benefit on a public servant knowing that the public servant is prohibited by law from accepting it. *See* TEX. PEN. CODE ANN. § 36.09(a) (Vernon 2003). As explained above, it is unlikely that acceptance of the described payment would be prohibited by section 36.07. In any event, section 36.09 does not apply to "any . . . benefit to which the public servant is lawfully entitled or for which he gives legitimate consideration in a capacity other than as a public servant." *Id.* § 36.10(a)(1) (Vernon Supp. 2004-05). It appears that the outgoing president receives a payment for services as an officer of a private association, not in the person's capacity as a local county or district clerk. If that is the case, then section 36.09 does not prohibit the payment.

## S U M M A R Y

A payment by a private association of public officials, compensating one of its members for services as its immediate past president, does not per se violate Penal Code sections 36.07, concerning prohibited honoraria, or 36.09, concerning the offer of a gift to a public servant. Section 36.07 does not prohibit fair compensation to a person for services as the president of a private association, assuming the person was elected president because of the person's skills and abilities and not because the person is a public servant of a particular county or district. Section 36.09 does not prohibit payment to a person for legitimate consideration rendered in a capacity other than as a public servant.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee